This is our second case of the day. 4-15-0082. In re. A.D. Helm v. Miller. See Attorney Brinkheder is here on behalf of the appellant. Attorney Jacobus is here on behalf of the appellee. Mr. Brinkheder, are you ready to proceed? May it please the Court. Counsel. Counsel. My name is James Brinkheder. I'm here for the appellants. I would start by telling the Court that on reflection I am not going to argue the second issue I've raised. I think the Court might tend to side with the respondent because I think the respondent is correct. The statute was amended and by reason of that amendment the word fitness no longer appears in the statute. I am going to strenuously maintain that the Court committed error by dismissing the petition of the plaintiffs or petitioners for lack of standing. I would point out that the Court after hearing opening statements in the trial proceeding made some comments that I think are very worthy and noteworthy on appeal. The Court begins by pointing out that it is appropriate to note because the lawyers well know but the parties may not know the law in this area. This is not a best interest hearing. In other words, the best interest which we consider in a custody battle do not enter into it. This is not a fitness hearing. As Ms. Jacobus points out, the probate statute which guardianships for minors are brought under, the statute does say that the Court lacks jurisdiction to proceed on a petition for the appointment of a guardian of a minor if it finds that the minor has a living parent, an adoptive parent or an adjudicated parent whose parental rights have not been terminated and whereabouts are unknown. All those things I believe are not in dispute today. The sole question here is whether or not Mrs. Miller is willing and able to take care, to care, make and carry out day-to-day decisions, day-to-day child care decisions concerning the minor. The Court then immediately says the only question is, is Mrs. Miller willing and able to make and carry out the day-to-day child care decisions. Those are the rules. Mr. Brinkhauer, first witness. So we put on our testimony and the Court, after hearing the evidence, made a finding that the case should be dismissed. I would point out that the statute, as the Court in In Re Tatiana T noted, has changed since the Supreme Court case of In Re RLS. The statute now reads that the Court lacks jurisdiction to proceed on the petition for the appointment of a minor if the guardian, if it finds that the minor has a living parent, adoptive parent or adjudicated parent whose parental rights have not been terminated unless the parent or parents voluntarily relinquish physical custody of the minor. I would suggest to the Court that when a child lives in one home for a decade, that it's fair to say that the parent has voluntarily relinquished custody of the child to the petitioners. I would suggest to the Court that this has been demonstrated by the record in this case and there is no getting around it. The parent placed the minor with Mr. and Mrs. Helm when she was in kindergarten. When she was enrolled in the Decatur school districts, my clients carried her back and forth from their home to Decatur. Three years later, the minor continued to live with her grandparents, the petitioners in this case, and began to attend the public schools in Mount Zion. My clients took care of her, they clothed her, they fed her, they took her to her parent-teacher conferences, they took her to the doctor. The plaintiff pointed out, and the respondent mother pointed out, that in the last four years prior to the petition, she had been remarried, or married for the first time, I'm not quite sure what the facts are. But she was placed with the grandparents when the mother got married and the mother visited her a grand total of either two times or three times in four years. This is a continuation of the placement of this child, of the voluntary relinquishment of this child, to the petitioners in this case that had begun when she was in kindergarten. My clients, the child is now a junior at Mount Zion High School. The minor herself testified that she had visited her mom two or three times. The mother's new husband testified that the minor had been over to visit them two or three times. Counsel, on the question of voluntary relinquishment, what do you make the trial court's statement that there's evidence both ways, on both sides of that issue, and it was your burden? There isn't evidence on both sides of that, Your Honor. There's some testimony by the mother that she lived with her folks, but that's against the manifest way to the evidence. The court's finding that there was evidence both ways ignores the fact that the minor herself testified that she lived with her grandparents. The mother testified she lived with her grandparents. The mother did testify that she got pregnant one time and she came and stayed there during her confinement. When the child was born, she left, and she left the child behind. Well, that argument seems pretty powerful to me. How could the trial court have got it wrong? What was it referring to when it said the other evidence? I don't know. I'm sorry, Your Honor. I can't fathom it. I went back after this hearing, after having witnessed the traumatic, you know, exodus of the child to a car, other than what she had arrived in at the end of the court, and I couldn't fathom what the court was talking about. Mr. Brinkhotter, did you seek a stay while you appealed? I didn't know you could get a stay. The last time I came up here to get a stay from a judge on a change of custody, I got roundly criticized and I went to... Here? Yes. By the trial judge? No, no, no, by the trial, by the appellate court. I was very... It wasn't one of us, was it? No, it was Judge Myerscough. Oh. I got scoffed by Judge Myerscough, and I learned my lesson. Stay out of federal court. Well, she was here. She was right here. Counsel, it almost seems like in looking at this record that the trial court took into consideration this minor at 17, and maybe just concluded what's really the purpose of the court getting into the middle of the situation, guardianship, given the age of the minor. Well, I think the court did say something of that nature. These parties ought to be able to work this out, but obviously they were in court because they couldn't work it out. And, Your Honor... Well, what is the significance of the guardianship at this point with the minor being 17 years old? Is there something... The minor is nothing... ...from the record? The minor has been involuntarily placed with her maternal grandmother, and she has run away, and she doesn't want to be there, and her mother took her home last week, and... Wait, so the mother doesn't even have the child? No. The mother... The child lives and goes to school at Mount Zion School District, and that school district is where she's going to graduate, hopefully. Cindy Danowitz, her maternal grandmother, also lives there. So, the mother took the child from the courthouse to her house, back to Cindy Danowitz's house, and fortunately the child is still living there in the Mount Zion School District, and unfortunately her grades have been totally off the wall. Right? A nosedive. So, I'm just... Well, counsel, supposing we would determine today that the trial court did have standing. Yes. Does that mean, then, we remand it for a best interest hearing at that point? I think we have to remand... I think the court should remand it... should issue a mandamus, or a... not a mandamus, but a ruling, and that we should be able to go back to court, and we should be able to get this kid back home. That's... and as soon as possible. Hearing on the guardianship. Because the court threw us out because we didn't have... the court did not believe it had jurisdiction. And that's where... and so, therefore, if we... if the court says, yes, standing does exist in this case, then we have to go back and ask the judge for a hearing on guardianship. And the guardian ad litem recommended that the guardianship be granted, so I would hope the court would listen to the guardian ad litem about this. So, that's all I really have to say. And I... as I said, I think that counsel's correct on the second issue, so I'm going to just step aside for her. Okay, thank you. We'll have more time on rebuttal, Mr. Bancada. Ms. Jacobus? Thank you. Good morning, and may it please the court, my name is Drew Jacobus, and I am from Bowen, Robinson, and Ellis in Decatur. First, I'd like to respond to some of the court's questions and some of counsel's arguments regarding the facts and how they played out in this case. It's my understanding that the evidence isn't in conflict so much today. We... the trial court had the opportunity to evaluate the witnesses, evaluate the minor child, which I think that was very important in his decision. And he found that there was no standing for the grandparents to move forward with this guardianship petition. A couple of things that were mentioned by counsel, and the court had a question about why the trial court found that the evidence was in conflict. The evidence was in conflict. There was evidence on the side that the child lived with the grandparents for her whole life. There was also evidence, I think, for four or five years she lived with the mother, then she moved with the mother in with the grandparents, so then they lived there for four or five more years. And then the mother got married, moved out, and was renting her home for the rest of her life. Well, the evidence is pretty much not refuted, however, that for the last four years, the child has lived with the grandparents, except for a couple of weekends. Right, right. She had lived with the grandparents, and the mother visited her, took her to medical appointments, held her medical card. And I would argue that the medical card and those medical decisions would go to that day-to-day, willing and able to make those day-to-day decisions. But we're not there yet. Our only issue is did they have standing to pursue a guardianship? Right. And I don't believe that they did. I believe the trial court was right. Counsel, go ahead. If you go back to the last four years and the minor has been with the grandparents, how is that not a voluntary relinquishment? Well, the court in Tatiana T., the courts in Illinois, have found that there has to be either an in-court oral statement for there to be voluntary relinquishment, an in-court oral statement, or some kind of written affirmation. So if mom just disappears, the grandparents can't step in on their own volition? Well, they can. They can step in. They can if they go to court and get it approved. But I believe that the superior rights doctrine, what the legislative intent was, was that it's harder than just saying in an out-of-court context, I'm the guardian of this child. Because the guardianship, of course, changes ability to make medical decisions, school decisions, all of these big decisions. And so the courts have found in Tatiana T., in that case, and in NREKJ, that there has to be that paper for voluntary relinquishment. There has to be either a document stating, I am giving permission for the grandparents to be guardian of my child, or there has to be some kind of in-court statement. The only case I found that actually held that there was a voluntary relinquishment was NREJB. That was in 2011. And the 4th District found that there was a voluntary relinquishment where the father had come in and stated, I consent to this guardianship. But he'd done that on the record in a previous proceeding. And so he came back after that. And at that point, it was of best interest because the court had standing because he had given that affirmation in court, that verbal affirmation. Can I just interrupt for a second? In Tatiana T., the minor had already been living with the parent for a year at the time the guardianship proceedings were going on. So that's very different from what we're looking at here, where this child lived with the grandparents for four years. Wouldn't you say that's a big distinguishing factor? I would say that's a big distinguishing factor. I would agree. But I do think that in this case, you know, the grandparents had the child for almost 17 years before ever filing a guardianship petition. They took care of her. They didn't need to until the mother started to assert her rights when the child was 17 or so. Well, and there was also some testimony that the grandparents kind of discouraged the mother from actually coming over and taking care of the child. And they wouldn't let her get the child. And the mother never did anything legally. I don't recall that testimony. From what witness did that come from? I believe – I thought I asked the mother that. I thought that's what I had asked the mother, and she had testified to that. Did she admit not even contacting the child on her birthday several years? Not that I recall. I believe that was a question, but I don't recall. Didn't your client's husband testify that he had been married to your client for four years and that during that time the minor had stayed overnight at their home only two or three weekends? He did, yes. And so I think it goes back to the formal written consent and the surrender. If there's no formal written consent or there's no surrender of the parental rights in an adoption proceeding, for example, there was no voluntary relinquishment. And there was no consent under these facts. Things happened out of court. The grandparents helped take care of the child. And also, as counsel stated, the maternal grandmother also helped take care of the child. The mother made the decision that it was in the best interest of the child to have the grandparents help her with her schoolwork. And so that's what she decided to do. My biggest reason for believing that the trial court should be affirmed in this case beyond the fact that he was the one who evaluated all the parties is that today we've got a lot of different types of families. We've got grandparents stepping in to help working parents. The mother in this case testified that for, I think, eight or nine years she was working full time. So that's why she had the grandparents pick the child up, help the child with homework, things like that. And then she would come home. She lived with the child in a home until she lost it. And then she was working and lived with the child with the grandparents in their home. And so if the jurisdictional question, if that standard becomes softened, then it would tend to create a constructive guardianship, which the court in Tatiana T. found that in all 50 states there is no constructive guardianship. And if it did create that constructive guardianship, the relationships between the parents, grandparents, and the grandchildren, I believe it would be chilled because you wouldn't be able to trust your parents. You could say, oh, you watch her, well, only certain hours, only certain times, and not develop that relationship with the child because you're worried that there's some kind of out-of-court constructive guardianship. And it is my belief that that was the legislative intent by putting this threshold in here, which the threshold's been there since before the fitness part of the statute was repealed in 2011. So it's my belief that that is why the legislature put that in there, is to give the superior rights of the child to the parent and to make it more difficult. You can't just have this constructive guardianship. You have to have a written or verbal affirmation to the court so that the court knows that this is your decision about your child. I believe that covers my arguments. And just kind of concluding on, if it were to get to the best interest, counsel mentioned that it was the recommendation of the guardian ad litem, if the threshold question was passed, that the guardian should be granted that it might be in the best interest. But in this case, there's nothing in the record that shows what's in the best interest because we couldn't get there because of the jurisdiction. So that's my argument. That's kind of a question for the trial court if jurisdiction were to be granted. But the evidence, the way I understood it from my client, was that the child ran away. Counsel said she ran away from her maternal grandmother. Well, she ran away from her paternal grandparents as well. That's in the record. She ran away from school and was running around. I mean, she's 17 years old. And that, I think, the evaluation of her demeanor by the trial court, I think was very important in determining what her preferences were, what her reasons were for preferring the Helms. And I think if we were to get to best interest, the record would have shown that the decisions they were making were not in her best interest. And the things that they were allowing her to do as a 17-year-old were not in her best interest. So in conclusion, I would state that the law in the area is clear. The facts as they are support Judge Weber's decision. The trial court properly found that the petitioners lacked jurisdiction to become guardians of the minor child for the reasons that the legislature intended. The decision of the trial court should be upheld. Are there any further questions I can answer? Thank you, Mr. Kovas. Thank you. Mr. Brink, do you have any rebuttal? Just take a couple minutes. These cases arise because parents let their children go live elsewhere and then people get emotionally attached and so on and so forth. And this is why there are so many cases in this area. But the facts are that in this case, the court has jurisdiction, the trial court had jurisdiction, and it's finding that it did not have jurisdiction may be attributable to the focus the court had at the beginning of the hearing when it made its opening comments after opening statements to the attorneys. And the finding that the child was with her mother is contrary to the evidence. So I believe that the court should reverse the trial judge and to demand the case for further proceedings consistent with the idea that the court does have jurisdiction. Thank you, counsel. We will take this matter under review at the stand in recess.